IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Wayne K., ) | |
| ) | |
|       *Plaintiff*, ) | |
| ) | Case No. 3:21-cv-50286 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
|       *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Wayne K. brings this action under 42 U.S.C. § 405(g) seeking a remand of the decision denying him disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

**I. Background**

In July 2016, Plaintiff filed an application for disability insurance benefits alleging a disability beginning on February 2, 2014, because of recurrent blood clots, migraines, depression, limited ability to walk, leg numbness if sitting too long, and kidney stones. R. 90, 384. Plaintiff also complained of numbness in his hands and difficulty handling objects. R. 531. Plaintiff last worked as a tractor trailer truck driver. R. 385. However, in June 2009 Plaintiff suffered a work-related injury to his shoulder and neck which resulted in degenerative disc disease in his cervical spine. R. 46, 531. Plaintiff stopped working following his injury due to his impairments. R. 384.

In October 2009, Plaintiff underwent a C4-C5 cervical fusion. R. 531. When Plaintiff's neck pain did not improve, in September 2012 his fusion was extended to C5-C7. *Id.* The second

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 11.

fusion helped with Plaintiff's neck pain, but it did not help with the numbness in his hands and difficulty handling objects. *Id.* Plaintiff was told he developed nerve damage, and he continues to report difficulty using his hands. *Id.*

Following a hearing, an administrative law judge (ALJ) issued a decision in June 2018, finding that Plaintiff was not disabled. R. 114-23. However, the Appeals Council remanded the case for further proceedings because the residual functional capacity (RFC) failed to adequately account for Plaintiff's severe migraines. R. 131.

Following remand, in February 2020, Plaintiff testified at another hearing before a different ALJ. R. 40-88. Plaintiff's claim for disability insurance benefits was consolidated with Plaintiff's August 2018 claim for supplemental security income. R. 14. In April 2020, the ALJ issued a partially favorable decision finding that Plaintiff was disabled since June 28, 2016 and entitled to supplemental security income benefits. R. 14-30. However, the ALJ found that Plaintiff was not disabled prior to his date last insured of March 31, 2015 and therefore was not entitled to disability insurance benefits.

The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; peripheral artery disease status post left common femoral thrombectomy; migraine headaches; chronic kidney disease; chronic nephrolithiasis; and orthostatic hypotension. The ALJ determined that through Plaintiff's date last insured his impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the RFC to perform light work with certain restrictions. The ALJ determined that Plaintiff could not perform his past relevant work, but there were other jobs that existed in significant numbers in the national economy that he could perform, including order clerk, document preparer, and preparer. Plaintiff was 43 years old on his date last insured.

After the Appeals Council denied Plaintiff's request for review on May 17, 2021, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## III. Discussion

Plaintiff appeals the ALJ's partially favorable decision, arguing that: (1) the RFC did not sufficiently account for his severe headaches; (2) the RFC did not sufficiently account for the limitations in his ability to use his hands; and (3) the step five determination is not supported by substantial evidence. The Court agrees that the ALJ's assessment of Plaintiff's ability to use his hands is not supported by substantial evidence and requires a remand. Therefore, the Court will focus on the evidence relevant to the ALJ's evaluation of this issue in the discussion below.

A claimant's RFC is the maximum work that he can perform despite any limitations. *See*

20 C.F.R. § 404.1545(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history and findings, the effects of treatment, reports of daily activities, medical opinions, and effects of symptoms. 20 C.F.R. § 404.1545(a)(3); Social Security Ruling 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012).

Here, in finding that Plaintiff's limitations with his hands were not work preclusive, the ALJ summarized the evidence to include Plaintiff's testimony that he experienced worsening numbness and pain in his hands and difficulty gripping smaller items. R.24. Although Plaintiff could not tie and sometimes needed help pulling a shirt over his head, he could do large buttons and zippers. In January 2014, a consultative examination revealed that Plaintiff demonstrated diminution of sensation to light touch over both hands and 4/5 grip strength bilaterally, but Plaintiff retained the ability to manipulate with his hands.

The ALJ acknowledged that at the hearing in February 2020, Dr. Stephen Kaplan, who testified as an independent medical expert, opined that Plaintiff did not have the capacity to do fine manipulation due to a loss in gross manipulation and difficulty with fine manipulation. R. 25. Specifically, Dr. Kaplan, who reviewed the entire record, opined that due to Plaintiff's loss of light touch in his hands he could not do any fine manipulation. R. 65. Dr. Kaplan further testified that due to Plaintiff's decreased grip strength, he had some limitation in gross manipulation. R. 64. When the ALJ asked Dr. Kaplan if he saw improvements in 2014 and 2015, Dr. Kaplan replied: "No, I don't think they – there's much else in the records that I reviewed that tells us his

4

manipulative abilities. [ ] Except, you know, occasionally that he would have a normal physical examination, but, you know, you'd have to have something more precise than that to really convince yourself that his hands are better." R. 65. The ALJ then asked Dr. Kaplan about the records from the neurologist Plaintiff was seeing for migraines, who reported five out of five grip strength in Plaintiff's hands. *See* R. 673-91. Dr. Kaplan responded that "his strength is not the issue. It's the – the question is whether he has fine touch – he has light touch or not." R. 65.

Although the ALJ gave Dr. Kaplan's opinion "great weight" in formulating the RFC, he did not adopt his limitation for no fine manipulation. R. 25-26. Instead, the ALJ determined that "[g]iven a combination of the claimant's degenerative disc disease of the cervical spine with evidence of reduced grip strength in the bilateral hands and reduced sensation," Plaintiff was limited to frequent "fingering" (fine manipulation). R. 24; *see Samuel S. v. Berryhill*, 118CV00990MJDSEB, 2019 WL 168437, at *7 (S.D. Ind. Jan. 11, 2019) ("[F]ingering is an alternative term used to describe fine manipulation."). The ALJ's evaluation of Dr. Kaplan's opinion is as follows:

> I have given great weight to the medical expert opinions of Dr. Kaplan and Dr. Semerdjian to the extent consistent with the residual functional capacity assessed herein. Dr. Kaplan endorsed limitation to a light range of exertion due to the claimant's status post cervical discectomies, and Dr. Semerdjian endorsed greater standing and walking limitations due to the claimant's status post cardiac catheterization. Otherwise, I find limitation to no fine manipulation as opined by Dr. Kaplan is unsupported by and inconsistent with the overall evidence of the claimant's functioning, particularly considering findings upon internal medicine examination that he maintained ability to manipulate with his bilateral hands (B1F/1-2). Additionally, he testified to having no problem with large buttons or zippers.

R. 25-26. Plaintiff argues that the ALJ selectively cited portions of the evidence to improperly discount Dr. Kaplan's opinion when formulating the RFC. The Commissioner argues that the ALJ provided substantial evidence in support of his conclusions. This Court agrees with Plaintiff and

finds that the ALJ failed to explain how the record supports his conclusion that Plaintiff could carry out fine manipulation frequently.

Dr. Kaplan was the only medial opinion addressing Plaintiff's manipulative limitations during the relevant period and he reviewed the same evidence that the ALJ did when determining the RFC assessment. Yet, Dr. Kaplan opined that greater restrictions were warranted. In support of discounting Dr. Kaplan's opinion, the ALJ first relies on a January 2014 consultative examination which stated: "The claimant is able to manipulate with fingers of both hands." R. 532. However, the consultative examiner gave no opinion on the frequency of Plaintiff's ability to manipulate with his fingers. *See Williams v. Colvin*, 15 C 7011, 2016 WL 6248181, at *15 (N.D. Ill. Oct. 25, 2016) (remanding where "The critical issue, however, was the degree to which Plaintiff could [perform fine manipulation]."). Furthermore, Dr. Kaplan specifically relied on the 2014 examination findings when he opined that due to Plaintiff's loss of light touch, he was unable to do any fine manipulation. R. 65. The ALJ credited Plaintiff's reduced sensation in his hands, but he came to a contrary conclusion from Dr. Kaplan without sufficient explanation for his determination. It remains unclear how Plaintiff's general ability to manipulate his fingers undermines Dr. Kaplan's opinion and supports his ability to carry out fine manipulation on a frequent basis. *See Amey*, 2012 WL 366522, at *13 (requiring the ALJ to explain how he reached his RFC conclusions).

The ALJ's second reason for discounting Dr. Kaplan's opinion is because Plaintiff testified that he could button large buttons and use zippers. However, Plaintiff also testified that he was not able to do small buttons or tie his shoes. R. 47. Dr. Kaplan considered Plaintiff's testimony and determined that Plaintiff was unable to do fine manipulation. It is unclear why the ALJ relied on Plaintiff's ability to do large buttons and zippers rather than his inability to do small buttons and

6

tying when assessing Plaintiff's ability for fine manipulation. *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) ("[T]he residual functional capacity analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

The Commissioner further argues that the relevant medical evidence did not compel a finding of greater restrictions on Plaintiff's ability to use his hands. The Commissioner points to a 2013 nerve conduction study of Plaintiff's upper extremities that was "normal." Def.'s Resp. at 5, Dkt. 17. First, the ALJ only identified this study in his summary of the medical evidence with no analysis as to how this study supported the RFC assessment. *See* R. 22; *Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *8 (N.D. Ill. Oct. 30, 2015) ("[S]ummarizing a medical history is not the same thing as analyzing it, in order to build a logical bridge from evidence to conclusion."); *Alevaras v. Colvin*, No. 13 C 8409, 2015 WL 2149480, at *4 (N.D. Ill. May 6, 2015) ("[M]erely summarizing medical evidence is not the same thing as analyzing it and explaining how the evidence supports the conclusion that the claimant is not disabled."). Accordingly, the Commissioner's "attempt to supply a post-hoc rationale" for the ALJ's decision "runs contrary to the *Chenery* doctrine" and are improper. *Lothridge v. Saul*, 984 F.3d at 1234-35; *see also Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon."). Second, as the ALJ noted in his summary, while the nerve study found no evidence of upper limb peripheral neuropathy, cervical radiculopathy was not ruled out. R. 22-23 (citing R. 3021-23).

7

The Commissioner also cites to the same examinations from Plaintiff's neurologist that Dr. Kaplan rejected as evidence of improvement to argue that greater restrictions were not warranted. *See* Def.'s Resp. at 5, Dkt. 17. Again, the ALJ did not rely on these examinations in discounting Dr. Kaplan's opinion. Nevertheless, the Commissioner highlights Plaintiff's full grip strength, despite Dr. Kaplan's explicit testimony that strength was not the issue. The Commissioner similarly does not address Dr. Kaplan's testimony that despite some normal physical examinations, there needed to be more precise medical evidence to show that Plaintiff's hands were better. The records the Commissioner references only state generally that Plaintiff had "normal pinprick, temperature, vibration, position, and light touch." *See, e.g.*, R. 675. The records do not specify where Plaintiff retained light touch and whether it was on his hands, specifically his fingers, or elsewhere.

The ALJ's evaluation of Dr. Kaplan's opinion and his determination that Plaintiff could perform frequent fine manipulation was critical to the ALJ's decision because the VE testified that the jobs Plaintiff could perform would be unavailable to an individual that could only occasionally carry out fine manipulation. R. 84. Without further explanation from the ALJ, the determination that Plaintiff retained the ability to carry out frequent fine manipulation is not supported by substantial evidence. Accordingly, a remand is required for the ALJ to clarify what record evidence supports the RFC assessment.

In remanding this case, the Court is not indicating that Plaintiff must be limited to only occasional fine manipulation, but rather that the issue should be explored more thoroughly. The ALJ must provide a more comprehensive analysis of Dr. Kaplan's testimony and the evidence supporting the RFC determination on remand. In light of this Court's remand, it will not address Plaintiff's remaining arguments. However, Plaintiff's counsel should raise all issues argued on

8

appeal with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion.

Date: September 19, 2022　　　　By:　*Lisa A. J*
　　　　　　　　　　　　　　　　　　Lisa A. Jensen
　　　　　　　　　　　　　　　　　　United States Magistrate Judge